Kunwar v Northwell Health (2024 NY Slip Op 03740)

Kunwar v Northwell Health

2024 NY Slip Op 03740

Decided on July 10, 2024

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on July 10, 2024
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

VALERIE BRATHWAITE NELSON, J.P.
JOSEPH J. MALTESE
HELEN VOUTSINAS
JANICE A. TAYLOR, JJ.

2019-00850
2019-03446
2019-07443
 (Index No. 700389/15)

[*1]Yashoda Kunwar, etc., appellant, 
v
Northwell Health, et al., respondents, et al., defendants.

Bhurtel Law Firm PLLC, Jackson Heights, NY (Durga P. Bhurtel of counsel), for appellant.
Shaub, Ahmuty, Citrin & Spratt, LLP, Lake Success, NY (Christopher Simone, Lena Holubnyczyj, and Nicholas Tam of counsel), for respondents Forest Hills Hospital, Long Island Jewish Medical Center, Sandeep Jauhar, and Rachel Palakkadan.

DECISION & ORDER
In an action to recover damages for medical malpractice and lack of informed consent, etc., the plaintiff appeals from three orders of the Supreme Court, Queens County (Peter J. O'Donoghue, J.), entered November 29, 2018, February 21, 2019, and May 14, 2019, respectively. The order entered November 29, 2018, inter alia, denied the plaintiff's motion to compel certain discovery. The order entered February 21, 2019, among other things, denied the plaintiff's motion for leave to amend the complaint to add certain party defendants. The order entered May 14, 2019, insofar as appealed from, granted those branches of the motion of the defendants Northwell Health, Forest Hills Hospital, Long Island Jewish Medical Center, Sandeep Jauhar, Rachel Palakkadan, Larry Miler, and Jeanne Wener which were for summary judgment dismissing the amended complaint insofar as asserted against the defendants Forest Hills Hospital, Long Island Jewish Medical Center, Sandeep Jauhar, and Rachel Palakkadan.
ORDERED that the order entered November 29, 2018, is affirmed, without costs or disbursements; and it is further,
ORDERED that the order entered February 21, 2019, is affirmed, without costs or disbursements; and it is further,
ORDERED that the order entered May 14, 2019, is modified, on the law, by deleting the provision thereof granting that branch of the motion of the defendants Northwell Health, Forest Hills Hospital, Long Island Jewish Medical Center, Sandeep Jauhar, Rachel Palakkadan, Larry Miler, and Jeanne Wener which was for summary judgment dismissing the cause of action alleging medical malpractice insofar as asserted against the defendant Forest Hills Hospital, and substituting therefor a provision denying that branch of the motion; as so modified, the order entered May 14, 2019, is affirmed insofar as appealed from, without costs or disbursements.
On March 29, 2013, the plaintiff's 44-year-old husband, Yem Bahadur Rayamajhi, [*2]suffered a stroke while hospitalized at Long Island Jewish Medical Center (hereinafter LIJMC), which resulted in severe disability. On January 15, 2015, the plaintiff and Rayamajhi commenced this action, inter alia, to recover damages for medical malpractice and lack of informed consent against, among others, the defendants Sandeep Jauhar, Rachel Palakkadan, Larry Miler, and Jeanne Wener. The complaint was subsequently amended to add LIJMC, Northwell Health, and Forest Hills Hospital (hereinafter FHH) as defendants. The plaintiff and Rayamajhi alleged, primarily, that the purported delay by the defendants in diagnosing and treating a thrombus in the left ventricle of Rayamajhi's heart resulted in his stroke.
On August 31, 2018, the plaintiff moved to compel certain discovery, including for Jauhar to appear for a continued deposition and for four nonparty witnesses to appear for depositions. In an order entered November 29, 2018, the Supreme Court, inter alia, denied the plaintiff's motion.
On October 24, 2018, the plaintiff moved for leave to amend the complaint to add three additional defendants, who were doctors that allegedly treated Rayamajhi at FHH or LIJMC during the relevant period. Although by the time the plaintiff moved to add the additional defendants the relevant statute of limitations had expired (see CPLR 214-a), the plaintiff argued that the relation-back doctrine allowed her claims against those proposed defendants to relate back to the claims previously asserted against the other defendants. In an order entered February 21, 2019, the Supreme Court, among other things, denied the plaintiff's motion, determining that the plaintiff failed to meet her burden to establish that the proposed new defendants knew or should have known that, but for a mistake by the plaintiff as to the identity of the proper parties, the action would have been timely commenced against them.
On October 25, 2018, Northwell Health, FHH, LIJMC, Jauhar, Palakkadan, Miler, and Wener (hereinafter collectively the Northwell defendants) moved for summary judgment dismissing the amended complaint insofar as asserted against them. In opposition, the plaintiff submitted, inter alia, an affidavit of an expert in cardiology and an affirmation of an expert in neurology. Those experts both opined, among other things, that FHH departed from accepted standards of medical care when it failed to perform additional echocardiograms or immediately begin treating Rayamajhi with heparin after an echocardiogram performed on March 20, 2013, did not rule out the existence of a left ventricular thrombus. In an order entered May 14, 2019, the Supreme Court, inter alia, granted the Northwell defendants' motion for summary judgment dismissing the amended complaint insofar as asserted against them.
The plaintiff appeals from the orders entered November 29, 2018, and February 21, 2019, and so much of the order entered May 14, 2019, as granted those branches of the Northwell defendants' motion which were for summary judgment dismissing the amended complaint insofar as asserted against FHH, LIJMC, Jauhar, and Palakkdan.
"The supervision of discovery, and the setting of reasonable terms and conditions for disclosure, are within the sound discretion of the Supreme Court. The Supreme Court's discretion is broad because it is familiar with the action before it, and its exercise should not be disturbed on appeal unless it was improvidently exercised" (Provident Life & Cas. Ins. Co. v Brittenham, 284 AD2d 518, 518; see Matter of Metro-North Train Acc. of Feb. 3, 2015, 178 AD3d 929, 931). Here, the Supreme Court providently exercised its discretion in denying the plaintiff's motion to compel certain discovery. Where, as here, a party's discovery demands are overbroad and burdensome, seek irrelevant information, or fail to specify with reasonable particularity what is demanded, the appropriate remedy is to vacate the entire demand (see Star Auto Sales of Queens, LLC v Filardo, 216 AD3d 839, 840; Fox v Roman Catholic Archdiocese of N.Y., 202 AD3d 1061, 1062). Moreover, the court providently exercised its discretion in denying that branch of the plaintiff's motion which was to compel Jauhar to appear for a continued deposition, and that branch of the plaintiff's motion which was to compel the four nonparty witnesses to appear for depositions (see Vargas v Lee, 170 AD3d 1073, 1076).
The relation-back doctrine, which is codified in CPLR 203(c), allows a claim asserted against a defendant in an amended complaint to relate back to claims previously asserted against a [*3]codefendant for statute of limitations purposes where the two defendants are "united in interest" (id.; see Buran v Coupal, 87 NY2d 173, 177; Wilson v Rye Family Realty, LLC, 218 AD3d 836, 838; Sally v Keyspan Energy Corp., 106 AD3d 894, 896-897). In order for the relation-back doctrine to apply, a plaintiff must demonstrate that "(1) the causes of action arose out of the same conduct, transaction, or occurrence; (2) the new party is united in interest with one or more of the original defendants, and by reason of that relationship can be charged with such notice of the institution of the action that he or she will not be prejudiced in maintaining his of her defense on the merits; and (3) the new defendant knew or should have known that, but for a mistake by the plaintiff as to the identity of the proper parties, the action would have been commenced against him or her as well" (Petruzzi v Purow, 180 AD3d 1083, 1084). "Notice to the new defendant within the applicable limitations period is the linchpin of the relation-back doctrine, and thus the third prong of the test focuses, inter alia, on whether the defendant could have reasonably concluded that the failure to sue within the limitations period meant that there was no intent to sue that person at all and that the matter has been laid to rest as far as he or she is concerned" (Shapiro v Good Samaritan Regional Hosp. Med. Ctr., 42 AD3d at 444 [emphasis and internal quotation marks omitted]).
Here, the plaintiff's motion for leave to amend the complaint to add certain doctors as defendants, more than three years after the applicable statute of limitations had expired, was properly denied. Specifically, the Supreme Court correctly determined that the plaintiff failed to present evidence in satisfaction of the third prong of the test, that the proposed additional defendants were aware that a medical malpractice action had been commenced prior to the expiration of the statute of limitations. Notably, the proposed defendants had treated Rayamajhi days or weeks before his stroke. Furthermore, the plaintiff had amended the complaint twice to add additional defendants and had discontinued her claims against other defendants when she made her motion. Thus, the proposed defendants could have reasonably concluded that the failure to sue them within the limitations period meant that there was no intent to sue them at all (see Sanders v Guida, 213 AD3d 712, 717; Garcia v New York-Presbyt. Hosp., 114 AD3d 615, 616; Stevens v Winthrop S. Nassau Univ. Health Sys., Inc., 89 AD3d 835, 836). Therefore, the plaintiff failed to meet her burden to demonstrate that the proposed defendants knew or should have known that, but for a mistake by the plaintiff as to the identity of the proper parties, the action would have been commenced against them as well.
"The essential elements of medical malpractice are (1) a deviation or departure from accepted medical practice, and (2) evidence that such departure was a proximate cause of injury" (Mendoza v Maimonides Med. Ctr., 203 AD3d 715, 716 [internal quotation marks omitted]; see Stewart v New York Hosp. Queens, 214 AD3d 919, 921). "In moving for summary judgment dismissing a cause of action alleging medical malpractice, a defendant must establish, prima facie, that there was no departure or deviation from the accepted standard of care or that such departure or deviation was not a proximate cause of any injury to the plaintiff" (Attia v Klebanov, 192 AD3d 650, 651). "To rebut the defendant's prima facie showing, a plaintiff must submit an expert opinion that specifically addresses the defense expert's allegations" (M.T. v Lim, 203 AD3d 778, 778-779 [internal quotation marks omitted]). "General and conclusory allegations of medical malpractice, however, unsupported by competent evidence tending to establish the essential elements of medical malpractice, are insufficient to defeat a defendant [provider's] summary judgment motion" (J.P. v Patel, 195 AD3d 852, 854 [internal quotation marks omitted]). "In order not to be considered speculative or conclusory, [expert opinions in opposition] should address specific assertions made by the movant's experts, setting forth an explanation of the reasoning and relying on specifically cited evidence in the record" (Attia v Klebanov, 192 AD3d at 651 [internal quotation marks omitted]).
Here, the Supreme Court correctly determined that the Northwell defendants established, prima facie, that FHH, LIJMC, Jauhar, and Palakkadan were entitled to judgment as a matter of law dismissing the cause of action alleging medical malpractice insofar as asserted against them. To this end, the Northwell defendants submitted, among other things, affirmations of experts in emergency medicine, cardiology, neurology, and nursing, in which they collectively opined that the treatment rendered to Rayamajhi on March 13, 2013, and on March 25 through March 29, 2013, at LIJMC, and on March 14, 2013, and on March 19 through March 25, 2013, at FHH, did not [*4]deviate from accepted medical and nursing practice, and that Rayamajhi's care and treatment did not proximately cause Rayamajhi's alleged injuries.
In opposition, the plaintiff failed to raise a triable issue of fact as to whether an alleged departure in the care of Rayamajhi by LIJMC, Jauhar, or Palakkadan, was a substantial factor in causing his stroke. The opinions of the plaintiff's experts, a cardiologist and a neurologist, respectively, failed to address the specific assertions made by the Northwell defendants' experts, regarding, among other things, the appropriateness of Rayamajhi's diagnosis and treatment on March 13, or that, from March 25 through March 29, anticoagulation was the most reasonable course of treatment for him in light of his medical history and diagnosis (see id. at 652). As such, there were no conflicting expert opinions warranting a jury determination regarding the cause of action alleging medical malpractice insofar as asserted against LIJMC, Jauhar, and Palakkadan (see Tsitrin v New York Community Hosp., 154 AD3d 994, 996).
However, contrary to the Supreme Court's determination, the plaintiff raised a triable issue of fact as to whether a purported delay by FHH in administering anticoagulation therapy to Rayamajhi was a departure from accepted medical practice and was a substantial factor in causing Rayamajhi's injuries. The plaintiff's experts both opined that, after being admitted to FHH on March 19, 2013, for exacerbation of congestive heart failure, an echocardiogram performed on March 20, 2013, did not rule out a left ventricular thrombosis, and therefore anticoagulation therapy should have been administered to Rayamajhi immediately and a further echocardiogram performed. The plaintiff's experts both opined that the delay until March 24, 2013, in administering anticoagulation therapy, given Rayamajhi's medical history, was a departure from good and accepted medical practice, and that such departure was a substantial factor in causing Rayamajhi's stroke.
Accordingly, the Supreme Court should have denied that branch of the Northwell defendants' motion which was for summary judgment dismissing the cause of action alleging medical malpractice insofar as asserted against FHH.
The plaintiff's remaining contentions are either not properly before this Court or without merit.
BRATHWAITE NELSON, J.P., MALTESE, VOUTSINAS and TAYLOR, JJ., concur.
ENTER:
Darrell M. Joseph
Clerk of the Court